UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RODERICK DARNELL HARRIS,

Defendant.

No.  2:19-cr-00235-KJM

ORDER

Defendant moves to suppress evidence, namely a firearm law enforcement officers recovered from his person after stopping and searching him on a dirt bike trail in Fairfield, California.  Mot. to Suppress ("Mot."), ECF No. 23.  The government opposes the motion, Opp'n to Mot. to Suppress (Opp'n), ECF No. 24, and the defendant has filed a reply ("Reply"), ECF No. 25.  The court held an evidentiary hearing by videoconference on July 21, 2020.[1]  Having carefully considered the evidence offered at hearing, the parties' briefing and closing arguments,

---

[1] Defendant consented to the evidentiary hearing proceeding by videoconference.  The government objected, but the court overruled the government's objection, finding it was not feasible to take evidence in the courtroom in light of the public health risks posed by the coronavirus (COVID-19) pandemic, and in particular the circumstances in the Sacramento Division at the time of the hearing.

and the applicable law, for the following reasons, the court GRANTED defendant's motion in a summary bench order on August 10, 2020.  This order confirms and EXPLAINS the grant.

I.       PARTIES' ARGUMENTS

Defendant challenges the validity of the officers' search as incident to arrest, arguing that the arrest of defendant for riding his bicycle on the sidewalk was not supported by probable cause, and even if it was, the bicycle riding violation cannot support a custodial arrest. Defendant contends that because the government cannot establish lawful grounds for arrest, the search itself was unlawful. Mot. to Suppress ("Mot."), ECF No. 23 at 7–8.

The government argues the search here was a righteous search incident to arrest, and points to four separate alleged statutory violations it believes provided the foundation for the search.  It argues in its briefing that defendant's act of riding his bicycle on the sidewalk in violation of Fairfield Municipal Code 4.9.3 was enough to provide probable cause as required, and in the alternative that probable cause was based on two separate obstruction of justice statutes, California Penal Code section 148 and California Vehicle Code section 2800.1, as well as a violation of California Vehicle Code section 40302(a).  Opp'n to Mot. to Suppress ("Opp'n"), ECF No. 24 at 4–5.

II.      EVIDENCE ELICITED[2]

A.      Defendant's Evidence

Defendant presented the testimony of two witnesses in addition to his own.  Each witness testified that she interacted with defendant on the day of his arrest, October 19, 2019. The first witness, Amber Nothstein, testified she helped defendant organize and repack belongings in his pickup truck, which he parked in front of a home one of their other friends was staying in.  When they were done with this task, Ms. Nothstein said she watched defendant walk away with his bicycle on Hamilton Street, heading in the general direction of Auto Mall Parkway.

---

[2] At the time the court issued its bench order, neither party had requested a transcript of the evidentiary hearing.  The court here summarizes the evidence based on its observations presiding over the proceeding, and has checked its recollection of the evidence by reviewing a rough transcript provided as a courtesy by the court reporter.

1   As he walked away, Ms. Nothstein testified she saw a police car on Hamilton near the corner with

2   Auto Mall Parkway.  While Ms. Nothstein's testimony regarding the packing and organizing of

3   defendant's truck and watching defendant walk away was consistent and credible, in discussing

4   the locations of the police car and defendant's truck she occasionally contradicted herself.  For

5   example, at one point she said the police vehicle was parked on Hamilton facing Woolner, but at

6   another point said she first saw the car was driving toward Woolner on Hamilton.  She at another

7   point described defendant's truck as parked next to the mobile home park facing Woolner but at a

8   different time said the truck was on the other side of Hamilton facing Auto Mall Parkway.  At

9   times, Ms. Nothstein was unable to recollect what had happened.[3]

10          The second witness, a homeless woman named Jaime Franklin, testified that on

11   October 19, she was near her tent, pitched in an open field south of Auto Mall Parkway, close to a

12   large tree located on a dirt trail.  At some point midday she saw defendant ride his bike up the

13   trail marked "C" on Defense Exhibit 1, to the "Big Tree," marked "D" on the same exhibit.  *See*

14   ECF No. 39, Def. Ex. 1.  Defendant stopped to speak with Ms. Franklin; while they were

15   speaking they saw a police car at the corner of Hamilton Dr. and Auto Mall Parkway.  *See also*

16   Franklin Decl., ECF No. 23, Ex. B.[4]  Worried the police might be "upset" by her camping, Ms.

17   Franklin began to clean the area around her tent.  She testified that defendant rode off on his

18   bicycle, heading toward another trail, marked as "E" on defendant's exhibit, which runs

19   perpendicular to Trail C and extends from Auto Mall Parkway to the north and Woolner to the

20   south; Ms. Franklin said defendant turned right, or south, onto Trail E.  Def. Ex. 1; Franklin

21   Decl., Ex. B at 2.  After defendant rode away, Ms. Franklin testified she saw the police car drive

22

23          [3] During Ms. Nothstein's testimony, which she provided from a remote motel room
location arranged by defense counsel, there were some distortions in the electronic transmission
24   of her testimony.  At various points the court asked her to repeat what she said to be sure her
answers were clear.  Despite the technical issues, Ms. Nothstein was able to complete her
25   testimony and respond to all questions from each counsel and the court.

26
          [4] The hearing exhibits are all identified by numbers, while the parties' exhibits filed in
27   support of or opposition to the motion to suppress are identified by letters.  To the extent a
witness's declaration is consistent with his or her testimony at hearing, the court also cites the
28   declaration here.

up Trail C where it stopped under the Big Tree for a "few minutes." The officer in the car did not say anything to her. The officer then drove after defendant, saying something to him out of his window, Franklin Decl., Ex. B at 2, and turning on his flashing lights. After the officer turned on the lights, Ms. Franklin said she saw defendant get off of his bike and sit on the ground.

Defendant himself waived his Fifth Amendment right to remain silent and testified. After being sworn, he said that on October 19, he had been cleaning his car with Ms. Nothstein. When they were done, he left the car and headed north on Hamilton Drive, walking his bicycle. Referencing defense exhibit 1, defendant testified he turned onto dirt Trail C and rode his bicycle up to the Big Tree, where Ms. Franklin's tent was set up. He said he and Ms. Franklin were talking, when they noticed the police car at the corner of Hamilton and Auto Mall Parkway and saw that it appeared to be watching the persons gathered near the Big Tree. Defendant alerted the other people at the tree to the police car's presence and then got back on his bike and rode to Trail E. He testified he turned south or right towards Woolner where he said he planned to check on his crawdad traps, which he had placed in the creek very near Woolner. As defendant rode off, the police car was still parked on Hamilton Drive. Defendant says he heard the officer say something from where he was parked but was not able to hear what he said. Defendant did not notice the police car again until he heard it speed up behind him on Trail E with its lights on. When defendant saw the lights turn on, he got off his bike and sat on the ground.

B.   Government's Evidence

Fairfield Police Officer Tuss, the arresting officer, testified that he spotted defendant across the field from where he was sitting in his car parked at the corners of Auto Mall Parkway and Hamilton Drive. Referencing the same map of the area that defendant's witnesses reviewed, Tuss said he saw defendant bicycle away from the tents near the Big Tree and turn north up Trail E, heading towards Auto Mall Parkway. Officer Tuss said he then made a U-turn with his car and turned right onto Auto Mall Parkway with the intention of following defendant. Officer Tuss saw defendant ride from the dirt trail up onto the sidewalk forming a pedestrian

bridge over the creek, which he testified was a violation of Fairfield Municipal Code 4.9.3.[5] Previously, at a preliminary examination held in state court in connection with charges against defendant for violations of California Penal Code sections 29800(a)(1)[6] and 148,[7] Tuss testified it appeared to him defendant was trying to follow a path along the creek, but it was blocked by a locked gate next to the Home Depot parking lot. Prelim. Exam., Gov't Ex. C, at 6; ECF No. 39, Ex. 5 at 1. The Home Depot parking lot is on the north side of the creek. Tuss said he then saw defendant ride back across the sidewalk forming the pedestrian bridge and towards the same path he saw him ride up earlier.

Without turning on his lights or sirens, Officer Tuss used his vehicle intercom to tell defendant to get off his bike and sit down on the side of Auto Mall Parkway. Prelim. Exam. at 7. When defendant did not comply Officer Tuss said he moved "closer" and repeated the command through his open window, again without lights or sirens activated. *Id.* at 7. This time defendant waved his hand "as if he was signaling me to go away" and began riding back down Trail E. *Id.*; Crime Report, ECF 24 Ex. A, at 2.

Officer Tuss testified he then made a U-turn in his car on Auto Mall Parkway, took a left on Hamilton, and turned up a dirt road running north of Trail C, cutting a corner short and driving to the right of telephone pole to turn onto Trail E as quickly as possible in pursuit of

---

[5] Fairfield Municipal Code 4.9.3 makes it an infraction punishable by a $100 fine to ride a bicycle on the sidewalk.

[6] California Penal Code section 29800(a)(1) prohibits "Possession of a Firearm by a Prohibited Person" and is analogous to the instant Felon in Possession of a Firearm charge.

[7] California Penal Code section 148(a)(1) provides:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

defendant.  During his testimony at hearing, Tuss marked both the entire route he says defendant

took on his bicycle and his own route in his car.  *See* ECF No. 39, Ex. 6A.  Also during the

hearing, the government's counsel elicited testimony from Officer Tuss based on a screen grab

from the officer's dashcam video, showing the view outside the driver's side window of the

officer's car.  The video image is consistent with Officer Tuss's testimony describing the route he

took to get onto Trail E.  Gov't Ex. 30; *cf.* Govt's Exs. 10, 11.

        C.      Body Cam and Dispatch Recording

        The government offered evidence of both Officer Tuss's body cam recording and

the dispatch recording from the time each began.

        Office Tuss did not call dispatch initially upon seeing and beginning to pursue

defendant.  Rather, the dispatch recording begins as Officer Tuss is pursuing defendant down

Trail E.  Gov't Ex. 4, ECF No. 39 ("Dispatch Recording"), at 1:04.  Officer Tuss can be heard

saying, "I think it's Roderick Harris."  *Id.* at 1:35–1:48.  Within approximately fifteen seconds,

Officer Tuss tells dispatch that defendant is compliant, and he is sitting down.  *Id.* at 2:05–2:10.

At this point the dispatch call overlaps with the video from Officer Tuss's body cam.

        Officer Tuss did not turn on his body cam until just before stepping out of the car

to approach defendant sitting on the ground on Trail E.  As the body cam is trained on defendant,

Officer Tuss can be heard saying defendant was riding his bike on the sidewalk; defendant

repeatedly and unequivocally says he was not.  Gov't Ex. 1, ECF No. 39 ("Arrest Footage"), at

00:47.  In response to Tuss's question, defendant identifies himself as Roderick Harris. Arrest

Footage at 1:15–1:27.  He tells the officer he does not have any identification on him except what

was "on his chest."[8]  *Id.*  Early on in the encounter, Officer Tuss asks dispatch about defendant's

probation status, to which dispatch says, "negative probation."  Dispatch Recording at 2:53.

        During his back and forth with Officer Tuss, recorded on the body cam, defendant

says he was not riding on the sidewalk, and explains "[he] came out of this thing here and [he]

---

[8] It is not clear from the recording what defendant meant by "on his chest," whether
referring to something like dog tags or a lanyard, or a tattoo.

was gonna go down that side," as he is gesturing towards the other side of the creek.  Arrest Footage, at 2:56.  Then, a second time, defendant says, "I finna[9] go down that trail right there" while pointing across the creek, running his hand up and down the direction of the trail there. Arrest Footage at 3:03.

While defendant is still sitting on the ground, after Officer Tuss has told dispatch he is compliant, three other officers appear on the scene and participate in handcuffing and searching defendant.  *See* Arrest Footage starting at 5:17, *see also* Dispatch Recording at 2:27, 2:48, 3:35.  When defendant asks why they are searching him, more than one officer says they are looking for identification, asserting the search for ID was authorized by California Vehicle Code section 40302.  Arrest Footage at 7:09.  As defendant had told Officer Tuss at the beginning of their encounter, he repeatedly said when asked he did not have any identification on him.  *See* Arrest Footage, at 1:15, 3:28, 4:23; *see also* Dispatch Recording at 1:36, 2:53.

After approximately two minutes of searching defendant, while he was in handcuffs, the officers found the firearm defendant now moves to suppress.

III.   LEGAL STANDARDS

"[T]he standard of probable cause 'applies to all arrests.'"  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (quoting *Dunaway v. New York*, 442 U.S. 200, 208 (1979)). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  *United States v. Pannell*, 26 F. App'x 696, 697 (9th Cir. 2002) (internal quotation marks omitted).  The Fourth Amendment does not bar warrantless arrest for minor criminal offenses, assuming probable cause is present.  *Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). However, when an arrest is not based on a warrant "the burden of proof is on the Government to demonstrate, by a preponderance of the evidence, that the arresting officers had probable cause

---

[9] "Finna" is a contraction of "fixing to," meaning "going to, intending to."  *See* New Oxford American Dictionary (online).

for the [defendant's] arrest." *United States v. Ladley*, 517 F.2d 1190, 1192 (9th Cir. 1975) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).  Probable cause determinations are broken into two steps.  First, the court must determine the "historical facts." *Ornelas v. United States*, 517 U.S. 690, 696 (1996)  Second, the court must determine whether those "'historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 366 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690 (1996)).

"[O]ne whose Fourth Amendment rights are violated may successfully suppress evidence obtained in the course of an illegal search and seizure." *Rakas v. Illinois*, 439 U.S. 128, 138 (1978).  The Fourth Amendment requires that an underlying search warrant be based on "probable cause, supported by Oath or affirmation[.]"  U.S. Const. amend. IV.  However, when executing a custodial arrest "police officer[s] may conduct a warrantless search of the arrestee's person and the area 'within [their] immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)); *see also United States v. Mota*, 982 F.2d 1384, 1386 (9th Cir. 1993) (custodial arrest required to justify search incident to arrest, barring separate probable cause for search).

Specifically, "[t]he search-incident-to-arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and his surrounding area, when the search is incident to the arrest." *United States v. Smith*, 389 F.3d 944, 950–51 (9th Cir. 2004) (citing *Chimel*, 395 U.S. at 762–63).  This rule is predicated on the importance of finding weapons that could otherwise endanger the arresting officer and preventing the destruction or manipulation of evidence by the arrestee. *Chimel*, 395 U.S. at 763.  At the time a search takes place, the officers must have reason to believe the suspect could access the space being searched. *Compare Arizona v. Gant*, 556 U.S. 332, 344 (2009) (search incident to arrest not reasonable when defendants were handcuffed and locked in separate patrol cars), *with New York v. Belton*, 453 U.S. 454, 456 (1981) (search incident to arrest upheld when single police officer ordered four unrestrained suspects to separate and stand on side of road while he searched vehicle); *see also United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008) (finding "search of [defendant's] car was characterized by neither the spatial nor the temporal proximity to the place and time of

1   the arrest to constitute a valid search incident to arrest" when defendant was handcuffed and a

2   block away).

3   IV.     DISCUSSION

4           As noted above, the government points to multiple grounds as making the search

5   and subsequent discovery of the firearm at issue lawful.  It argues that separate violations of

6   Fairfield Municipal Code 4.9.3, California Vehicle Code section 2800.1, California Penal Code

7   section 148 and California Vehicle Code section 40302(a) all independently justify the arrest and

8   search incident to arrest of defendant.

9           A.      Probable Cause

10          For the court to resolve the probable cause question, it must first resolve two

11  inquiries:  First, is it more likely than not that Officer Tuss witnessed Defendant ride his bike on

12  the sidewalk?  Second, is it more likely than not that defendant committed actions constituting

13  obstruction of Officer Tuss's duties?  See Mot. at 7–; Opp'n at 5–7; Reply at 4–.  The court

14  addresses each in turn.

15                  i.      Whether Defendant Bicycled on the Sidewalk

16          Starting with the first inquiry, defendant makes two admissions at 2:56 and 3:05 of

17  Officer Tuss's body cam footage, which the court finds are critical.  Arrest Footage at 2:56, 3:05.

18  In the first instance, defendant protests, "I came out of this thing here, and I was gonna go down

19  that side." *Id.* at 2:56.  Several seconds later, defendant states, "I finna [was going to] go down

20  that trail right there" while pointing to the other side of the creek.  *Id.* at 3:05.  The maps

21  introduced by both sides at the evidentiary hearing indicate the only path defendant could have

22  taken to access the path on the other side of the river required him to use the pedestrian bridge –

23  the sidewalk -- to cross over where Officer Tuss claims to have seen him riding his bike.  Map of

24  Incident Scene, ECF No. 23, Ex. 1.  While defendant and Ms. Franklin both testified at hearing

25  that defendant rode only south on Trail E after seeing Officer Tuss's police car, this testimony

26  does not square with defendant's statements recorded by the body cam, which are admissions

27  fatal to his position that he never rode on the sidewalk.  Defendant's evidence also is not

28  consistent with the dash cam screen grab confirming the route Officer Tuss said he took with his

9

patrol car.  *See* Gov't Ex. 30.

The court finds this evidence makes it more likely than not that defendant did ride his bicycle across the bridge on the sidewalk, establishing probable cause for Officer Tuss to stop defendant for a suspected violation of Fairfield Municipal Code 4.9.3, which makes it an infraction for riding a bicycle on a sidewalk.

ii.   Whether Defendant Engaged in Obstruction of Justice

In the alternative, the government argues law enforcement was authorized to search defendant in a valid search incident to arrest based on defendant's non-compliance with Officer Tuss.  Opp'n at 4–5.  The government makes two arguments regarding "obstruction of justice."  *Id.*  First, it invokes California Vehicle Code section 2800.1, which makes it a misdemeanor to evade police when they have activated their lights and sirens.  Opp'n at 5. Officer Tuss and defendant, however, were consistent in their testimony at hearing, that once Tuss activated his lights, defendant got off his bike and sat on the ground.  There was no probable cause for a violation of California Vehicle Code section 2800.1.

Second, the government points to California Penal Code section 148(a)(1),[10] which is a general obstruction of justice statute.  Opp'n at 4.  It argues defendant violated this code section when he refused to engage after Officer Tuss initially verbally directed defendant to get off his bike and speak with him, while both were on or next to Auto Mall Parkway.  Opp'n at 4. For the government to satisfy probable cause that defendant broke this law, however, it would need evidence showing the first interaction involved  more than Officer Tuss's asking to talk and that Tuss put defendant on notice he was attempting to effectuate a seizure; this is because there is no general obligation to speak with police when asked.  *See United States v. Drayton*, 536 U.S. 194, 200-01 (2002) (Individuals may terminate interactions with police when "a reasonable person would feel free" to do so).  Additionally, "[u]nder California Law, the fact that someone verbally challenges a police officer's authority or is slow to comply with orders does not mean

---

[10] Section 148 also requires that "defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties," *Yount v. City of Sacramento*, 43 Cal.4th 885, 894-95 (Cal. 2008), which is not in question here.

1  that they have delayed an investigation." *Arias v. Amador*, 61 F. Supp. 3d 960 (E.D. Cal. 2014);

2  *see also Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) (contrasting

3  outright refusal to comply with lawful command with failure to "respond with alacrity"). Here,

4  when Officer Tuss later activated his lights, a clear sign he was signaling defendant to stop,

5  defendant did demonstrate a willingness to comply.

6        To the extent the government relies on Officer Tuss's testimony to fill the

7  evidentiary gap, the officer's testimony is insufficient to support probable cause without

8  corroboration. *See McCray v. State of Illinois*, 386 U.S. 300, 304 (1967) (consistency between

9  testimony of two witnessing officers was critical to finding of probable cause). The record does

10 not support a finding of probable cause that defendant had committed a violation of California

11 Penal Code section 148.

12        Because the government has only established probable cause for a violation of

13 Fairfield Municipal Code 4.9.3, the court next considers whether such a violation can support an

14 arrest and search incident to arrest.

15    B.    Fairfield Municipal Code 4.9.3

16        While there was probable cause for an arrest of defendant for a violation of

17 Fairfield Municipal Code 4.9.3, such an arrest cannot support a search incident to arrest.

18 "[A]bsent probable cause to search, a 'custodial arrest' is 'necessary to support a search incident

19 to arrest.'" *United States v. Mota*, 982 F.2d 1384, 1386 (9th Cir. 1993) (quoting *United States v.*

20 *Parr*, 843 F.2d 1228, 1230 (9th Cir. 1988)).  As defendant argues, state law prohibits arrests for

21 misdemeanors, including municipal infractions, from escalating to "custodial arrests" unless the

22 arresting officer follows a series of steps clearly delineated by statute. *See* California Penal Code

23 § 853.5(a).[11]  First, the officer must request the presentation of identification and have the

24 _____

[11] California Penal Code section 853.5(a) provides as follows:

25

26             Except as otherwise provided by law, in any case in which a person
               is arrested for an offense declared to be an infraction, the person may
               be released according to the procedures set forth by this chapter for

27             the release of persons arrested for an offense declared to be a
               misdemeanor.  In all cases, except as specified in Sections

28             40302, 40303, 40305, and 40305.5 of the Vehicle Code, in which a

                                              11

offender sign a written promise to appear.  If the person cannot produce identification, as here,

then the officer may require the arrestee to provide a thumb or fingerprint.  If and only if the

person refuses to sign the promise, or provide a thumb or finger print, may the officer then arrest

the suspect and take him or her into custody.  *Id.*

Because a "custodial arrest" is required for a search incident to arrest, and state

law explicitly precludes an arrest for the infraction under the circumstances in which defendant

was detained here, the search of defendant does not qualify as a search incident to arrest.

      C.     California Vehicle Code § 40302

As noted, the government argues California Vehicle Code section 40302 provides

an independent basis for defendant's arrest.  Section 40302(a) makes it a violation when an

individual is arrested for a separate violation of the California Vehicle Code and fails to present

"his or her driver's license or other satisfactory evidence of his or her identity and an

unobstructed view of his or her face for examination"; under these circumstances, the suspect

"shall be taken without unnecessary delay before a magistrate."[12]  As the statutory text makes

---

person is arrested for an infraction, a peace officer shall only require
the arrestee to present his or her driver's license or other satisfactory
evidence of his or her identity for examination and to sign a written
promise to appear contained in a notice to appear. If the arrestee does
not have a driver's license or other satisfactory evidence of identity
in his or her possession, the officer may require the arrestee to place
a right thumbprint, or a left thumbprint or fingerprint if the person
has a missing or disfigured right thumb, on the notice to
appear. Except for law enforcement purposes relating to the identity
of the arrestee, no person or entity may sell, give away, allow the
distribution of, include in a database, or create a database with, this
print. Only if the arrestee refuses to sign a written promise, has no
satisfactory identification, or refuses to provide a thumbprint or
fingerprint may the arrestee be taken into custody.

[12] California Vehicle Code section 40302(a) provides:

Whenever any person is arrested for any violation of this code, not
declared to be a felony, the arrested person shall be taken without
unnecessary delay before a magistrate within the county in which the
offense charged is alleged to have been committed and who has
jurisdiction of the offense and is nearest or most accessible with
reference to the place where the arrest is made in any of the following

12

express, a violation of section 40302(a) has as a prerequisite a separate violation of the California Vehicle Code. *See* Cal. Veh. Code § 40302(a) (beginning with "[w]henever a person is arrested with a violation *of this code*" (emphasis added)). The original moving violation in this case could only have been that of Fairfield Municipal Code 4.9.3, the infraction carrying with it a $100 fine. For section 40302(a) to be triggered, then, the California Vehicle Code would need to incorporate Fairfield Municipal Code 4.9.3.

California Vehicle Code section 21206 addresses local bicycle regulations, but it does not incorporate into the Vehicle Code generally any municipal statutes regulating bicycles traveling on pedestrian walkways.[13] Rather, it merely clarifies the state "does not prevent local authorities. . . from regulating the registration of bicycles and the parking and operation of bicycles on pedestrian or bicycle facilities" as long as local regulations are not inconsistent with the Vehicle Code. Cal. Veh. Code § 21206. In other words, in adopting local rules, municipalities are not augmenting or amending the state statutory scheme, something only the state Legislature can do.

Because the California Vehicle Code does not incorporate Fairfield Municipal Code 4.9.3, California Vehicle Code section 40302(a) was not triggered by defendant's riding his bicycle on the sidewalk. Because California Vehicle Code section 40302 also does not provide a lawful basis for defendant's arrest, the arrest here was not lawful, nor was the search. *Wong Sun v. United States*, 371 U.S. 383, 485 (1963) (citing *Weeks v. United States*, 232 U.S. 383 (1914)

---

cases:

(a) When the person arrested fails to present both his or her driver's license or other satisfactory evidence of his or her identity and an unobstructed view of his or her full face for examination.

[13] California Vehicle Code section 21206 provides:

This chapter does not prevent local authorities, by ordinance, from regulating the registration of bicycles and the parking and operation of bicycles on pedestrian or bicycle facilities, provided such regulation is not in conflict with the provisions of this code.

("[E]vidence seized during an unlawful search could not constitute proof against the victim of the search.")).  The firearm seized from defendant must be suppressed.

V.     <u>CONCLUSION</u>

As announced from the bench on August 10, 2020, the motion is GRANTED.  The bench order, explained by this order, resolves ECF No. 23.

IT IS SO ORDERED.

DATED:  August 12, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

14